[J-32-2015][M.O. – Eakin, J.]

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| RALPH GILBERT, GLORIA GILBERT, MICHELLE TORGERSON, EDWIN TORGERSON, MELDA BITTORF, BEVERLY COX, WILLIAM COX, KIMBERLY MILES, CLEA FOCKLER, JOHN FOCKLER, LINDA ECKERT, SCOTT ECKERT, WILLIAM STRINE, KENNY JASINSKI, DENNIS JASINSKI, KATHRYN JASINSKI, JOSEPH JASINSKI, PATRICIA UNVERZAGT, MEGAN JACOBS, BARBARA UNVERZAGT, DONNA PARR, JEFF FODEL, WENDY FODEL, JENNIFER JASINSKI, JOHN JASINSKI, JUDY QUEITZSCH, JEAN FRY, RICK MCSHERRY, JOHN FREESE, DONNA LYNN FREESE, JEFF VAN VOORHIS, SUSAN LEE FOX, TERRENCE FANCHER AND DONNA FANCHER, | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 121 MAP 2014<br><br>Appeal from the Order of the Superior Court dated 4/15/14 at No. 119 MDA 2013, reversing and remanding the order of the Common Pleas of York County, Civil Division, dated 12/28/12 at No. 2008-SU-003249-01<br><br>ARGUED:  May 5, 2015 |
| Appellees | | |
| v. | | |
| SYNAGRO CENTRAL, LLC, SYNAGRO MID-ATLANTIC, GEORGE PHILLIPS, HILLTOP FARMS AND STEVE TROYER, | | |
| Appellants | | |

## CONCURRING OPINION

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  December 21, 2015**

I join the majority opinion and write to suggest that, if the manner in which a farming practice is carried out deviates substantially from the norm and has unusual adverse effects upon neighboring properties, at some point that particular method of

implementing the practice should be viewed as a distinct practice whose agricultural normalcy should be independently evaluated. Indeed, the line separating a farming industry practice as such, and the particular manner in which it is implemented, may not always be clear. *Cf.* Majority Opinion, *slip op.* at 31 (explaining that the question of whether an agricultural operation is "normal" for Section 954(a) purposes "is a broad one, focusing on the practice in general, not on whether the defendant . . . conducted the practice in accordance with accepted industry standards and regulations").

Here, a significant issue, to my mind, is whether the application of biosolids on farmland, no matter how it is undertaken, constitutes a single "agricultural operation[]" for purposes of the statute of repose. 3 P.S. §954(a). The majority concludes that it does and that it is agriculturally normal. *See* Majority Opinion, *slip op.* at 33-35. The majority continues that "the *manner* in which biosolids are applied at a particular site is not determinative of the practice's normalcy," but, instead, "go[es] to the underlying merits of the nuisance claim[.]" *Id.* at 35 (emphasis added). Although, as explained below, I ultimately agree with the majority, I see the issue as a close one, for the following reasons.

There was evidence that, as used by Hilltop Farms, the biosolids were, for the most part, applied to the surface of the land and were not plowed into the soil. *See* N.T., Feb. 16, 2012, at 26 (deposition of Synagro employee Jonathan Coble), *reproduced in* R.R. 373a. In this regard, a fact sheet issued by the United States Environmental Protection Agency lists various methods to reduce odors at land application sites, including subsurface injection or incorporation of biosolids into the soil. *See* Biosolids and Residuals Management Fact Sheet, EPA 832-F-00-067, at 2 (Sept. 2000), *reproduced in* R.R. 579a; *see also* Brief for Appellees at 4-7, 46-49 (suggesting that Appellants failed to take known precautions to reduce or control odors). Further,

Appellees contend incorporation of best practices into a farming methodology is an essential part of the agricultural operation itself for purposes of a judicial normalcy determination under the Right To Farm Act ("RTFA"). They note that courts in other States have reached similar outcomes under the right-to-farm legislation pertaining in those jurisdictions. *See* Brief for Appellees at 57-58 (citing *Wyatt v. Sussex Surry, LLC*, 2007 WL 5969399 (Va. Cir. Ct. 2007); *Trosclair v. Matrana's Produce, Inc.*, 717 So. 2d 1257 (La. Ct. App. 1998)).

I ultimately agree with the majority that, on the present record, application of biosolids is the appropriate categorization for assessment under Section 954(a). RTFA's stated legislative objectives are broadly remedial, *accord* Brief for *Amicus Curiae* Attorney General at 9 (observing that RTFA is a "broad and anticipatory statute aimed at protecting agricultural land and operations now and into the future"),[1] and as such, it is subject to a liberal construction designed to effectuate its objectives. *See* 1 Pa.C.S. §1928(c). As for the enactments at issue in *Wyatt* and *Trosclair*, those provisions are not statutes of repose and, moreover, unlike in Pennsylvania, they grant immunity from nuisance liability expressly in terms of agricultural operations conducted in accordance with best-management practices. *See Wyatt*, 2007 WL 5969399, at *2 (quoting VA. CODE ANN. §3.1-22.29(A)); *Trosclair*, 717 So. 2d at 1259 (quoting LA. REV. STAT. ANN. §3:3603(B)). Given these differences, I view the majority's present, broad categorical approach to the surface application of biosolids as appropriately balancing the protections afforded by RTFA with neighboring property owners' reasonable ability

---

[1] "It is the declared policy of the Commonwealth to conserve and protect and encourage the development and improvement of its agricultural land for the production of food and other agricultural products. . . . It is the purpose of [RTFA] to reduce the loss to the Commonwealth of its agricultural resources by limiting the circumstances under which agricultural operations may be the subject matter of nuisance suits and ordinances." 3 P.S. §951.

to challenge substantially altered conditions on the subject farm in a timely manner. With that said, I note that agricultural knowledge tends to develop and improve over time. Thus, I would not rule out the possibility that an evidentiary record in a future dispute could support the concept that the use of certain identified odor-control practices is necessary for a particular application of biosolids to qualify as "normal" and, thus, to fall within Section 954(a)'s protective scope.

Madame Justice Todd joins this concurring opinion.